UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHEREESE L. JIHAD<br><br>Plaintiff,<br><br>vs.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY<br><br>Defendant. | Civil Action No. 04-12550-RGS |

## DEFENDANT'S MOTION TO DISMISS

Defendant Massachusetts Institute of Technology ("MIT") moves for dismissal of plaintiff's amended complaint in this action pursuant to Fed. R. Civ. P. 12(b)(1), (5), and (6). The action is defective as a matter of law and should be dismissed because: (1) MIT has not been properly served with process; (2) this Court lacks subject matter jurisdiction because the complaint does not even purport to assert a claim under federal law, which is the only basis asserted for federal jurisdiction; (3) to the extent the complaint might be deemed to suggest a claim for a violation of Title VII, plaintiff has not alleged the procedural prerequisites for bringing such a claim, including that the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter; and (4) the Complaint fails to state a claim for a violation of Title VII, as it does not allege that plaintiff is a member of a protected class or that MIT discriminated against her due to her membership in any such class.

### Plaintiff's Allegations

Plaintiff's amended complaint alleges that plaintiff was "an assistant dentist" in MIT's Medical Department and that she was fired on March 11, 2003, for "lack of performance." She does not allege that this reason was incorrect, without basis, or pretextual. Plaintiff claims that her office manager, Donna Hayes, advised her on March 10, 2003, to file a complaint about plaintiff's assertion that Dr. Bonnie Padwa had called her a "monkey." Although the complaint that plaintiff originally filed in this action alleged that this was a "racial remark," the amended complaint does not include such an allegation. Plaintiff alleges that Ms. Hayes, Dr. Padwa, and "others" had "conspired to put together lies to support one another[s'] stories ag[a]inst me," and that Ms. Hayes had also "gone into my medical records without my permission." She alleges that these "facts were presented to M.C.A.D. and in their findings they did not mention."[1] She does not allege membership in any protected class, nor does she allege that MIT discriminated against her because of her membership in any such class.

I. **THE COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(5) BECAUSE MIT WAS NOT PROPERLY SERVED WITH PROCESS.**

The plaintiff has the burden of establishing that proper service has been effected on the defendant. *Saez Rivera v. Nissan Manufacturing Co.*, 788 F.2d 819, 821 n.2 (1st Cir. 1986). Because the plaintiff cannot establish that burden here, the Complaint should be dismissed for insufficient service under Fed. R. Civ. P. 12(b)(5).

MIT is a non-profit, charitable corporation established for educational purposes. *See* 1861 Mass. Acts c. 183, §1. Fed. R. Civ. P. 4(h) provides in pertinent part that

---

[1] Although plaintiff does not include such an allegation, the MCAD in fact dismissed the charge on January 30, 2004, for lack of probable cause, and affirmed that decision on May 6, 2004, on plaintiff's appeal.

service on a corporation or association within the United States shall be effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."

The summons and complaint in this action were not served on MIT in accordance with any of the methods allowed by Rule 4. Instead, these materials were brought to MIT's attention when an officer (presumably a United States Marshall) delivered them to the offices of Sullivan, Weinstein & McQuay, P.C. ("SWM"), in Boston, Massachusetts, on April 1, 2005. Affidavit of Robert E. Sullivan, Esq. ("Sullivan Aff.") at ¶¶4-6. The Process Receipt and Return of the summons that is on file with the Court indicates, under the title "Special Instructions," that the plaintiff requested that MIT be served at the offices of SWM, and that the "individual served" at SWM was "Robert Sullivan," who is a partner of SWM. Sullivan Aff. ¶1; Exhibit A hereto. There is no other proof of service of process on file with the Court in this action other than this one, and MIT was not served in any other manner.

Delivery of the Summons and Complaint to SWM was not proper service on MIT. SWM is not an officer, managing agent, or general agent of MIT. Sullivan Aff. ¶3. Although Jennifer Tucker, another SWM attorney, had represented MIT before the Massachusetts Commission Against Discrimination ("MCAD") in connection with Ms. Jihad's administrative claim before that agency, SWM was not authorized to accept service of process on behalf of MIT, either in this case or generally. *Id.* ¶¶2, 3. Mr. Sullivan allowed the officer to leave the papers at SWM's office because it appeared from the handwritten Complaint that SWM might be a defendant in the action. *Id.* ¶5, 6.

3

Specifically, the papers that were delivered included a complaint on which the name "Sullivan Weinstein & McQuay" was printed in the area that appeared to be the caption, below the name of "M.I.T.," and under the heading "Defendant<u>s</u>," in the plural. *Id.* ¶5 and Exhibit A thereto (emphasis added). Mr. Sullivan did not tell the officer that he was accepting service on behalf of MIT. *Id.* ¶7. SWM received authorization to represent MIT in the instant action only after April 1, 2005, but did not receive authorization for anyone at SWM to accept service of process for MIT. *Id.* ¶8.

Because the delivery of a copy of the Summons and Complaint to Mr. Sullivan at SWM did not constitute adequate service on MIT as required by Rule 4, and because MIT has not been served in any other manner, MIT has not been properly served with process in this action. The Complaint should therefore be dismissed under Rule 12(b)(5) for insufficiency of service of process.

II. **THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE ACTION BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM UNDER FEDERAL LAW.**

   A. **The Complaint Does Not Even Purport to Assert a Claim Under Federal Law.**

The Complaint claims federal jurisdiction solely pursuant to 28 U.S.C. §1331. However, the Complaint does not even purport to assert a claim under federal law, nor, indeed, mention any federal law. Because the Complaint on its face fails to allege any basis for federal jurisdiction, even in conclusory fashion, this Court lacks subject matter of the action.[2] The Complaint should therefore be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

---

[2] There is plainly no basis for diversity jurisdiction, inasmuch as both the plaintiff and MIT are citizens of Massachusetts.

4

**B.    Even If the Complaint Purported to Assert a Claim Under Title VII, It Fails to State Such a Claim.**

    **1.    The Complaint Does Not Allege that Plaintiff Exhausted Her Administrative Remedies.**

To the extent plaintiff's allegations might be construed as suggesting a claim under Title VII, such a claim could not support federal jurisdiction. The complaint does not demonstrate that plaintiff exhausted her administrative remedies, including filing the claim with the EEOC, receiving a right-to-sue letter from the EEOC, or suing within 90 days of the issuance of such a letter, which are prerequisites to such a suit.

It is very well established that plaintiffs must exhaust administrative complaint resolution procedures before they may sue in federal court for employment discrimination. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976). As this Court recently explained in *Cheney v. Emmaus, Inc.*, No. Civ. A. 04-11627-RGS (D. Mass. Oct. 5, 2004) (2004 WL 2237701 at *1), a plaintiff who asserts a claim that requires compliance with the administrative procedures in Title VII, 42 U.S.C. §2000e, (1) must file an administrative charge with the EEOC within 180 days of the alleged act of discrimination (as this Court noted, plaintiff has an additional 120 days to file with the EEOC if she initially proceeds with the MCAD); (2) may request a right-to-sue letter from the EEOC, and (3) must then file a complaint within 90 days of issuance of the letter. Receipt of a right-to-sue letter from the EEOC is a statutory prerequisite to the commencement of a suit under Title VII. *Tang v. State of R.I., Dept. of Elderly Affairs*, 904 F. Supp. 55, 58 (D.R.I. 1995); *Stimson v. Goodwill Industries of Northern New England*, No. 99-335-P-H (D. Me. 1999) (1999 WL 33117124 at *1) (receipt of right-to-sue letter from EEOC is ordinarily prerequisite to suit under statutes that require

compliance with procedural requirements set forth at 42 U.S.C. §2000e5(f)(1)); *Rice v. New England College*, 676 F.2d 9, 10 (1st Cir. 1982).

Where the plaintiff fails to establish compliance with these administrative procedures, including obtaining a right-to-sue letter, the action is not properly before the Court and should be dismissed. *See White v. Martin*, 23 F. Supp. 2d 203, 205 (D. Conn. 1998) (plaintiff's failure to obtain right-to-sue letter from EEOC warranted dismissal of Title VII claims based on failure to exhaust administrative remedies); *Banks v. Jefferson-Smurfit*, No. 1:00CV00814 (M.D.N.C. Oct. 17, 2002) (2002 WL 31370396 at *1) (dismissing Title VII case where plaintiff failed to allege "three facts necessary for the court to assert subject matter jurisdiction: (1) that [he] received a right-to-sue letter from the EEOC, (2) that he filed suit within 90 days of receiving that letter, and (3) that he submitted all of his claims to the EEOC").

Here, plaintiff does not allege facts suggesting that she has exhausted her administrative remedies with the EEOC. First, although charges filed with the MCAD are automatically cross-filed with the EEOC, the charge plaintiff filed with the MCAD does not purport to assert a claim under Title VII. *See* Exhibit B hereto.[3] In her MCAD charge, plaintiff states only that she believes MIT has committed a violation of M.G.L. c. 151B, but she makes no mention of Title VII. *Id.* Because the MCAD charge does not assert a Title VII claim, no such claim can be made here. Second, plaintiff does not allege that she ever requested, or received, a right-to-sue letter from the EEOC, or that this action was filed within 90 days of receiving such a letter. For this reason as well, plaintiff has failed to meet her burden of showing that she has exhausted her

---

[3] This Court may consider the MCAD charge on this motion because it is a public record that is referred to in plaintiff's complaint. *See, e.g., Perch v. City of Quincy*, 204 F. Supp. 2d 130, 131 n.1 (D. Mass. 2002).

6

administrative remedies, as required to bring a claim under Title VII. The Complaint should therefore be dismissed under Rules 12(b)(1) and (6) for failure to state a claim and for lack of subject matter jurisdiction.

    **B.**    **Plaintiff's Allegations Also Fail to State a Claim Under Title VII as a Substantive Matter.**

In addition, the complaint's substantive allegations are insufficient to state a claim under Title VII, or, indeed, any other federal law. 42 U.S.C. §2000e-2 makes it an illegal practice for an employer to, among other things, "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." (Emphasis added.) In *Swierkiewicz v. Soreman N.A.*, 534 U.S. 506, 512-14 (2002), the Supreme Court held that, although a complaint for employment discrimination need not contain specific facts establishing a prima facie case of discrimination, it must "state[ ] claims upon which relief could be granted under Title VII" and must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a)(2).

Here, the Complaint wholly fails to meet these requirements. It does not even meet the minimal threshold of stating a claim upon which relief may be granted under Title VII because (1) it does not allege that plaintiff is a member of a protected class, and (2) it does not state that MIT discriminated against the plaintiff because of her membership in any such class. And even if the Complaint included any such allegations, it does not state any facts showing that the plaintiff is entitled to recover on such a claim. Although plaintiff claims she was terminated one day after complaining about a remark that she perceived as "racial," she does not allege that her termination had anything to do

with her race. Indeed, and squarely to the contrary, plaintiff's complaint suggests that she was terminated for reasons other than discrimination: she claims that she was terminated after she complained about her office manager's alleged intrusion into her medical records, and that she was informed that her termination was for "lack of performance," a conclusion that she does not claim to have been unjustified.[4]

In short, nothing in the Complaint could reasonably support an allegation that plaintiff was terminated for any discriminatory reason, even if the Complaint purported to make such an assertion. The Complaint would therefore be insufficient under Fed. R. Civ. P. 8(a) even if it actually alleged discrimination against protected status. *See, e.g., Russell v. Tennessee Dept. of Correction*, 99 Fed. Appx. 575 (6th Cir. 2004) (2004 WL 834741 at *1) (dismissing plaintiff's *pro se* complaint, even though plaintiff there, unlike Ms. Jihad here, conclusorily pled that he was denied a promotion because of his race and color, where he alleged no facts that could reasonably support such a claim). Because plaintiff has failed to plead allegations that could support a claim under Title VII, or, indeed, any other principle of federal law, the Complaint should be dismissed under Rules 12(b)(1) and (6) for failure to state a claim and for lack of subject matter jurisdiction.

---

[4] Indeed, the very documents that plaintiff attached to her MCAD charge raise a number of questions about Ms. Jihad's performance. They include a memorandum referencing a "Performance Improvement Plan" that was established for Ms. Jihad in September 2002, and a memorandum from a dentist raising issues of concern to him relating to Ms. Jihad's performance for him as a dental assistant and noting that four out of five providers had asked not to be scheduled with Ms. Jihad as their assistant. *See* Exhibit B.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

        MASSACHUSETTS INSTITUTE OF TECHNOLOGY

        By its attorneys,

        /s/ A. Lauren Carpenter
        Jennifer Catlin Tucker, BBO#547944
        A. Lauren Carpenter, BBO#551258
        Sullivan Weinstein & McQuay, PC
        Two Park Plaza
        Boston, MA 02116
        (617) 348-4390
        Email: lcarpenter@swmlawyers.com

Dated: May 20, 2005

### Certificate of Service

I, A. Lauren Carpenter, hereby certify that a true copy of the above document was served by mail upon Chereese L. Jihad, 79 Munroe Street, #2, Roxbury, MA 02119, on May 20, 2005.

        /s/ A. Lauren Carpenter
        A. Lauren Carpenter

| U.S. Department of Justice | **PROCESS RECEIPT AND RETURN** |
|---|---|
| United States Marshals Service | See Instructions for "Service of Process by the U.S. Marshal" on the reverse of this form. |

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| CHEREESE L. JIHAD | 04-CV-12550 |
| **DEFENDANT** | **TYPE OF PROCESS** |
| Massachusetts Institute of Technology | Summ./Comp. |

**SERVE** NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN
➤ Sullivan Weinstein & McQuay, P.C.
ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)
**AT** Two Park Plaza, Suite 610 Boston, MA 02116-3902

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

CHEREESE L. JIHAD
79 MUNROE ST
ROXBURY MA 02119

| Number of process to be served with this Form - 285 | 1 |
|---|---|
| Number of parties to be served in this case | 1 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

Sullivan Weinstein & McQuay, P.C.
Two Park Plaza, Suite 610
Boston, MA 02116-3902

Signature of Attorney or other Originator requesting service on behalf of: ☒ PLAINTIFF ☐ DEFENDANT   TELEPHONE NUMBER: 617-541-3601   DATE: 3-29-05

---

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process: 1 | District of Origin No. 38 | District to Serve No. 38 | Signature of Authorized USMS Deputy or Clerk | Date: 3/29/05 |

I hereby certify and return that I ☒ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below).

Name and title of individual served (if not shown above): Robert Sullivan

☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.

Date of Service: 4/1/05   Time: 11:00 am

Signature of U.S. Marshal or Deputy

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or Amount of Refund |
|---|---|---|---|---|---|
| 48 | 4 miles | — | 46.46 | — | — |

REMARKS:

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

| | |
|---|---|
| MCAD DOCKET NUMBER: 03BEM01209 | EEOC/HUD CHARGE NUMBER: 16CA301633 |
| FILING DATE: 05/14/03 | VIOLATION DATE: 03/17/03 |

Name of Aggrieved Person or Organization:
Chereese Jihad
107 Heath Street
Jamaica Plain, MA 02130
Primary Phone: (617)522-5489 ext. ___

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
MIT
Chief Executive Officer
77 Massachusetts Avenue
Allston, MA 02134
Primary Phone: (617)253-1501 ext. ___

No. of Employees:    20 +

Work Location: Boston

Cause of Discrimination based on:
Race, Color, Black (Non-Hispanic).

The particulars are:
I, Chereese Jihad, the Complainant believe that I was discriminated against by MIT, on the basis of Race, Color. This is in violation of M.G.L. 151B Section 4 Paragraph 1 and.

See Attachment.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 5/14/2003.
NOTARY PUBLIC _____
SIGNATURE NOTARY PUBLIC _____
MY COMMISSION EXPIRES: _____

MCAD Docket Number 03BEM01209, Complaint

To: Mr. Robert J. Muti, Human Resources Officer
From: Mrs. Chereese Jihad
Re: Racial remarks, medical violation of confidentiality
Date: March 28, 2003

Dear Mr. Muti:

    Please accept this letter as a complaint in addressing the issues of my being fired from the Massachusetts Institute of Technology, Medical Department, Dental Department.

    On March 10, 2003 I was assigned to assist Dr. Bonnie Padwa in the M.I.T. Dental Department between 2:15pm & 2:25pm I went to the front to check for the next scheduled appointment for Dr. Padwa, I was told by Leo the Secretary that "Doctor Padwa has a add-in" (unscheduled patient). I informed Dr. Padwa of the add-in, at which Dr. Padwa responded, "You monkeys need to get things right with each other" I asked Dr. Padwa "Who are you calling a monkey?" She did not answer but walked away. Since Leo is a black person and I am a black person and that the two of us were the only black one's involved in the equation with Dr. Padwa, she must be calling us monkeys. I informed my office manager Donna Hayes of the matter (see attached letter #1) about half hour later that day, Dr. Padwa came to me to apologize saying "I was having a cranky day and that when I said monkeys I was referring to myself." On March 11, 2003 I filed a letter to my Office Manager Donna Hayes informing her about the incident and that I would be doing a follow-up letter concerning this matter and other behaviors that I believe to be racially suspect. The following day after Donna Hayes had received her letter she called me into her office and appeared nervous, she asked me "why did you go give the letter to your Pastor, why would you tell someone outside of M.I.T.?" I said "he is someone that I confide in.

    On Sunday March 16, 2003 my Pastor Brian C. Greene of The Pentecostal Tabernacle Church, Cambridge, MA. He spoke on the subject of The Enemy, only he spelled it In-A-Me, Pastor Brian said that we, as followers of Jesus Christ, should have an attitude of putting up with the insults of others even when we have been done wrong, this was the spirit that I went back to work with that next day, Monday.

    On Monday, March 17, 2003 myself and Dr. Padwa was called to a meeting by Ms. Winnie Dansby, the meeting was for Dr. Padwa and I to tell our sides of the story of what happened that day.

    The meeting lasted 10 minutes, Dr. Padwa once again said that she apologized and that, "I mis-understood her" we shook hands and left the meeting.

On March 24, 2003 at 11:00am I was given my annual Job Description and Performance evaluation by Donna Hayes, at which a set of goals were set for me to attain and that I would be getting my pay raise in June 2003 when these goals are met. That same day between 4:00pm and 4:15pm Donna Hayes approached me to inform me that I had a meeting with herself and Ms. Winnie Dansby. At this meeting I was told by Ms. Hayes and Ms. Dansby that "I was no longer needed." I was given a letter of complaints with no date or who it came from, as well as an evaluation date February 11, 2003 (see attached #2, #3) I stated to Ms. Hayes and Ms. Dansby that "I feel that you are firing me because of the complaint against Dr. Padwa, as an employee and a black woman both my rights have been violated, but this is not all that has been going on.

I believe that my Right to Privacy Act has also been violated. On Thursday, June 20, 2002 I was scheduled to have an appointment with my clinician, I informed Ms. Donna Hayes that I have a 11:15am appointment with my doctor, Ms. Hayes then asked "what kind of appointment", I said "a doctor's appointment."

Ms. Hayes then got on her computer and began to search to see if I indeed had an appointment, and when she could not find my appointment she told me to go check to see that I had one, which I did have one, at the time of this incident I was new at M.I.T. and was afraid of losing my job, just as it has caused me to lose it anyway for not wanting to be called "a monkey".

Mrs. Mutt, given the seriousness of the times that America is facing with its enemies abroad. A great institution of M.I.T. standards and world achievements, there should be no room for primitive thinkers masquerading along side the good men and women who have made M.I.T. the great institution that it is today.

It is with the above words that I appeal to your good nature and your office requesting an investigation on this matter be allotted to me and my family for the ill that has been imposed upon us by the above mentioned.

Thank you truly,

Chereese Jihad

c.c.
File
Robert J. Muti
Pastor Brian Greene



MIT Medical

Donna Hayes

MIT Medical, E23
77 Massachusetts Avenue
Cambridge, MA 02139-4307

February 11, 2003

Performance Improvement Plan for Chereese Jihad

The plan that was established in September, 2002 continues to be used as a means of monitoring specific behaviors. The goals established here will be reviewed on June 13, 2003, and evaluation made on whether or not goals where achieved. Compensation will depend upon success in all three of the areas being monitored.

1. In November, 2002, Chereese participated in and Infection Control review session and tested proficient at that time. I have requested feedback from all dental providers regarding sustained ability in this area and will follow up as necessary as situations arise. The goal used to evaluate success in this endeavor will be that infection control best practices will be maintained consistently with no complaints being registered by providers or co-workers on infection control techniques.

2. Chereese's ability to focus on the job at hand and anticipate providers' needs will be monitored carefully by the providers. I will rely on their feedback to prompt discussion. The goal for this performance improvement will be that no formal complaints are received from providers and that Chereese shows a continued awareness of individual providers' needs and knowledge of dental procedures based on patient needs.

3. Attendance expectations will be clearly outlined at the Performance Evaluation. There shall be no unexcused absences and an attendance rate of 95% must have been maintained in the three months from March 14 through June 13, 2003.

Donna Hayes RDH
Clinical Coordinator
MIT Dental Service
617-258-5254
Hayd@med.mit.edu

I am concerned about the performance level of Cherese Jihad. She was my dental assistant on Wednesday, March 12, 2003 and there were several issues that were of concern to me. During the course of the day the following events occurred.

1. When I began work on a patient, in front of the patient, she questioned my need for my magnifying loupes. When I told her that they were not needed for this procedure she asked if I could see as well.
2. Several times during the day she would interrupt conversations that I was having with a patient. She would offer personal experiences or continue to say that she agrees with what I was saying. During treatment she would interrupt to offer her opinion as to the appearance of the restoration. This appeared to annoy both patients.
3. There was a waste of dental materials. In order to prepare for a patient she would open and dispense several materials that would not have been used during the scheduled procedure. The required the disposal of these items
4. Two sealant procedures were performed during the day. Both times she did not know what to do. When explained the process she did not correctly assemble the apparatus once causing it to fall on the floor and another to require a change of the set-up.
5. I completed a patient at 3:15 and the next patient was to arrive at 3:45pm. The patient arrived at 3:45 and was announced. At 3:50 I went to my operatory to begin the appointment. The patient was not seated and Cherese was still in the process of cleaning the room. The patient was seated to begin treatment at 4:00pm. After the appointment I was informed by Dr. Duplaga the delay in cleaning the room was due to Cherese talking with Dr. Duplaga's patient. This caused a delay in Dr. Duplaga's schedule because the patient was not completing the necessary paper work while talking. This situation caused a delay in Dr. Duplaga's and my schedule.

The incidents discussed above have been part of an ongoing pattern. They have been noted by all providers who have worked with her. Four out of five providers have requested not to be scheduled to work with her. They expressed frustration at having to get themselves out of uncomfortable situations with patients.
These issues can be summarized into the following issues:
- Inappropriate comments in front of patients
- Poor time management
- Lack of attention to the current procedure
- Inability to perform common procedures correctly
- Wasting of materials
- Interrupting conversations between doctor and patient

TO: Donna Hayes, Officer Manager M.I.T. (Medical Dept.)

FR: Chereese Jihad, Dental Assistant

RE: Doctor Padwa's racial remark

DATE: March 11, 2003


On March 10, 2003 while performing my duties as an assistant to Dr. Padwa, I informed Dr. Padwa that she had an unscheduled add-in (patient). Dr. Padwa and I, a well as the patient, were in the surgical room when this took place.

When I informed Dr. Padwa of the new add-in, Dr. Padwa responded by saying, "Monkeys need to get things right with each other" at which I asked her, "Who are you calling a monkey?" Dr. Padwa did not respond. She just walked away.

I then went to the officer manager, Donna Hayes, to tell her what had happened and that I was very upset at what was said. I felt this behavior was not only racially wrong, but also professionally unsound for a doctor. An hour and a half later, Dr. Padwa returned and apologized to say that she was having a cranky day. She also stated that when she said "monkeys" she was referring to herself.

Because I am a practicing Christian, I have been ignoring Dr. Padwa's racial remark while she was performing on non-white patients. I think it's time that this issue, as well as other discriminating practices stop.

This is just a letter to inform my officer manager, Donna Hayes, of the incident that took place. There will be a follow-up letter on this issue.


CC: File
     Brian Greene, pastor

To: Doctor Williams Kettyle, MD
FR: Mrs. Chereese Jihad
RE: Racial & Medical Complaint
DATE: April 11, 2003

Dear Doctor Kettyle,

This is just a few words to inform you as to what have been going on with me in the Dental Department here at M.I.T. I thought it would be disrespectful to you and your office, seeing that you are the head of the Medical Department.

My husband and I met with Mr. Robert Muti and asked of him to deal properly with this issue in his department so that it would not go public. Mr. Muti said "You can not get your job back" I first of all did not ask for my job back and did not needed for him to assume that, that was what I wanted.

We have been waiting to hear from Mr. Muti and have not heard from, nor has he returned our call.

This is not a letter to say we do not know what to do or where to go, but a letter out of respect for you and you office, plus you helped my husband when he was having heart trouble and he was treated with a great deal respect and care by you. I hoping you can bring a peaceful solution to this matter.

Chereese Jihad

C.C.
  file